UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/19/2026

LISA HAMEL,

                    Plaintiff,

        -against-

BPAS LLC, BENEFIT PLANS
ADMINISTRATIVE SERVICES, INC.,
BENEFIT PLANS ADMINISTRATIVE
SERVICES, LLC, MARIST COLLEGE
SUPPLEMENTAL HEALTH COVERAGE
PLAN, and MARIST COLLEGE,

                    Defendants.

25-CV-3634 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Lisa Hamel brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., against BPAS LLC, Benefit Plans Administrative Services, Inc., and Benefit Plans Administrative Services, LLC (collectively, "BPAS"), the Marist College Supplemental Health Coverage Plan (the "Plan"), and Marist College (together with BPAS, "Defendants"). Presently before the Court are Defendants' motion for summary judgment and Plaintiff's cross-motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Dfts. Mot., ECF No. 25, Pltf. Mot., ECF No. 20.) For the following reasons, Plaintiff's cross-motion is DENIED, and Defendants' motion is GRANTED.

## BACKGROUND

### I.    Factual Background

The following facts derive from Parties' Rule 56.1 submissions and the record, and they are undisputed unless noted otherwise.

Plaintiff Lisa Hamel is a retired employee of Marist College. (Dfts Rule 56.1 Statement ("Dfts 56.1") ¶ 1, ECF No. 27; Pltf Counterstatement to Dfts Rule 56.1 Statement ("Pltf 56.1

1

Resp.") ¶ 1, ECF No. 31.) Marist established the Marist College Supplemental Health Coverage Plan. (Dfts 56.1 ¶ 2; Pltf 56.1 Resp. ¶ 2.) Plaintiff was a participant under the Plan, and BPAS was the Claims Administrator for the Plan. (Dfts 56.1 ¶¶ 4–5; Pltf 56.1 Resp. ¶¶ 4–5.)

During her employment with Marist, Plaintiff was a member of the Communications Workers of America, AFL-CIO. (Pltf Rule 56.1 Statement ("Pltf 56.1") ¶ 1, ECF No. 22; Dfts Response to Pltf Rule 56.1 Statement ("Dfts 56.1 Resp.") ¶ 1, ECF No. 32.) The union contract between Marist and CWA provided that eligible retirees "may be reimbursed up to $5000 per fiscal year per household for the cost of premiums for the retiree health insurance coverage selected by the retired member that is allowed to be reimbursed under a VEBA." (Pltf 56.1 ¶¶ 2–3; Dfts 56.1 Resp. ¶¶ 2–3.) While employed by Marist, Plaintiff was covered under a "plus one" plan that covered both Plaintiff and her husband, Kevin Hamel. (Pltf 56.1 ¶ 4; Dfts 56.1 Resp. ¶ 4.)

The Summary Plan Description states that the Plan provides certain former employees with reimbursement for eligible health-care expenses, with benefits intended to qualify for exclusion from participants' gross income under Internal Revenue Code § 105(b) and employer contributions intended to be excluded under Internal Revenue Code § 106. (Dfts 56.1 ¶ 3; Pltf 56.1 Resp. ¶ 3; Administrative Record ("AR") 62, ECF No. 26-3.) Eligible health-care expenses include premiums incurred by a participant, spouse, or dependents for medical, dental, prescription drug, or vision coverage, provided that the expense is incurred while the claimant is a participant and for the claimant, spouse, or dependents. (Pltf 56.1 ¶ 8; Dfts 56.1 Resp. ¶ 8; AR 64.)

On or about March 25, 2024, Plaintiff submitted a claim for benefits under the Plan and sought reimbursement for health insurance premiums. (Dfts 56.1 ¶¶ 6–7; Pltf 56.1 Resp. ¶¶ 6–7.) Plaintiff sought reimbursement for premiums associated with a "plus one" Anthem Blue Cross Blue Shield policy offered through her husband's employment and submitted her husband's pay stub reflecting health insurance deductions. (Pltf 56.1 ¶ 7; Dfts 56.1 Resp. ¶ 7.) Although Plaintiff

characterizes the premiums as paid by her husband, the pay stub indicated that the premium was paid with pre-tax dollars pursuant to an ERISA tax-qualified plan sponsored by her husband's employer. (Dfts 56.1 ¶ 8; Pltf 56.1 Resp. ¶ 8.)

BPAS denied Plaintiff's claim for benefits on the ground that insurance premiums paid by her spouse's employer and deducted from her spouse's payroll check on a pre-tax basis could not be reimbursed under a qualified plan pursuant to guidance from the Internal Revenue Service. (Dfts. 56.1 ¶ 9; Pltf. 56.1 Resp. ¶ 9.) The denial stated that "[i]nsurance premiums deducted from an employee payroll check on a pre-tax basis[] are not eligible" and that the item was "not eligible for reimbursement under this plan according to IRS guidelines." (AR 4.)

Plaintiff appealed the denial on August 19, 2024. (Pltf 56.1 ¶ 14; Dfts 56.1 Resp. ¶ 14; AR 6–9.) On December 12, 2024, she sent a letter noting that BPAS had not yet responded to her administrative appeal. (Pltf 56.1 ¶ 16; Dfts 56.1 Resp. ¶ 16; AR 23.) BPAS issued its final denial in response to Plaintiff's administrative appeal on January 6, 2025. (Pltf 56.1 ¶ 17; Dfts 56.1 Resp. ¶ 17; AR 43.) The final denial stated that "[t]he premiums she is trying to get reimbursed are pre-tax premiums that are not eligible to be reimbursed according to Publication 502 from the IRS." (Dfts 56.1 Resp. ¶ 17; AR 43.)

## II.    Procedural Background

Plaintiff commenced this ERISA action on May 1, 2025. (Compl., ECF No. 1.) Both parties now move for summary judgment. Defendants filed their motion for summary judgment (Dfts. Mot., ECF No. 25), Rule 56.1 statement (Dfts. 56.1, ECF No. 27), memorandum of law (Dfts. Mem., ECF No. 28), and reply. (Dfts. Reply, ECF No. 29.) Plaintiff filed her cross-motion for summary judgment (Pltf. Mot., ECF No. 20), memorandum of law in support (Pltf. Mem., ECF No. 21), Rule 56.1 statement (Pltf. 56.1, ECF No. 22), and her reply. (Pltf. Reply, ECF No. 23.) Plaintiff also filed a memorandum of law in opposition to Defendants' motion (Pltf. Opp., ECF

3

No. 30) and a counterstatement to Defendants' Rule 56.1 statement (Pltf. 56.1 Counter, ECF No. 31). Defendants filed a counterstatement to Plaintiff's Rule 56.1 statement. (Dfts. 56.1 Counter, ECF No. 32.)

## LEGAL STANDARD

### I.    Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] ... affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing ... that [the] adverse party cannot produce admissible evidence [in] support" of such a contention. Fed. R. Civ. P. 56(c)(1)(B). A fact is material if a dispute over that fact could impact the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Id.* (quotations and citations omitted).

If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a motion for summary judgment should fail. *Id.* at 258. Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quotations and citations omitted). The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence ... of a genuine dispute." Fed. R. Civ. P.

4

56(c)(1)(A)–(B). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (quotations and citations omitted). Similarly, "a party cannot create an issue of fact by submitting an affidavit in opposition to summary judgment that contradicts prior deposition testimony." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 104 (2d Cir. 2010) (citing *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)) (noting that such affidavits "greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact"). However, the mere fact that a non-movant's factual allegations in opposition are "self-serving" does not automatically render them insufficient to defeat summary judgment. *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998). Instead, summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," where "that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250. If the Court finds that one party to a case has "no real support for its version of the facts," a motion for summary judgment should be granted. *Community of Roquefort v. William Faehndrich, Inc.*, 303 F.2d 494, 498 (2d Cir. 1962).

**II. ERISA Claim Denial**

Courts should review a denial of benefits that is challenged under ERISA *de novo* unless the benefit plan gives the plan fiduciary or administrator discretionary authority to determine eligibility for benefits or to interpret the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the latter, the court reviews the denial for an abuse of discretion to determine whether the decision was arbitrary and capricious. *Alto v. Hartford Life Ins. Co.*, 485 F. App'x 482, 483 (2d Cir. 2012); *McCauley v. First Umum Life Ins. Co.*, 551 F.3d 126, 130 (2d Cir. 2008); *Solomon v. Metro. Life Ins. Co.*, 628 F. Supp. 2d 519, 527 (S.D.N.Y. 2009). The arbitrary and capricious standard is narrow and only allows courts to "overturn an administrator's decision to deny ERISA benefits [ ] if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 83 (2d Cir. 2009). Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached" and it "requires more than a scintilla but less than a preponderance." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995).

Generally, courts applying the arbitrary and capricious standard in ERISA cases should only consider evidence in the administrative record. *Miller*, 72 F.3d at 1071 ("We follow the majority of our sister circuits in concluding that a district court's review under the arbitrary and capricious standard is limited to the administrative record."). However, courts may in their discretion admit evidence outside of the administrative record for good cause. *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 631 (2d Cir. 2008).

## DISCUSSION

Plaintiff contends that the Plan required reimbursement because the premiums covered medical insurance for herself and her spouse. (Pltf. Mem. at 9–10.) Defendants argue that BPAS properly denied the claim because those premiums were already deducted pre-tax through Plaintiff's

husband's employer-sponsored plan, and reimbursing them again through the Marist Plan would conflict with the Plan's tax-qualified structure. (Dfts. Mem. at 3, 7–10.)

Although the parties dispute whether de novo or arbitrary-and-capricious review applies (Dfts. Mem. at 6; Pltf. Mem. at 4-6), the Court need not resolve that issue because Plaintiff's claim fails under either standard. Even applying de novo review, the standard most favorable to Plaintiff, she has not shown that the Plan required reimbursement of premiums paid or deducted on a pre-tax basis through her spouse's employer-sponsored plan. Defendants are therefore entitled to summary judgment and Plaintiff's motion is denied.

I.    **Plaintiff Has Not Shown That the Claimed Premiums Were Reimbursable Under the Plan**

ERISA plan documents are interpreted under federal common law principles of contract interpretation. *Lifson v. INA Life Ins. Co. of N.Y.*, 333 F.3d 349, 352 (2d Cir. 2003). Courts read the plan as a whole, giving effect to all provisions and avoiding an interpretation that isolates one clause from the plan's broader structure. *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002) ("This Court will review the Plan as a whole, giving terms their plain meanings."). Where the language is unambiguous, courts apply its plain meaning. *Id*. A claimant seeking benefits under ERISA bears the burden of establishing entitlement to benefits under the terms of the plan. *Paese v. Hartford Life & Accident Ins. Co*., 449 F.3d 435, 441 (2d Cir. 2006).

Plaintiff relies principally on Section 3.3 of the Summary Plan Description, which defines an eligible health-care expense to include "premiums incurred by you or your Spouse or Dependents" for "medical, dental, prescription drug, or vision coverage," provided the expense is incurred while the claimant is a participant and for the claimant, spouse, or dependents. (Pltf. 56.1 ¶ 8; Dfts. 56.1 Resp. ¶ 8; AR 64.) Because the Anthem Blue Cross Blue Shield "Plus One" policy covered Plaintiff and her husband, Plaintiff argues that the premiums fall within Section 3.3 and that no

Plan provision expressly excludes premiums paid through a spouse's employer on a pre-tax basis. (Pltf. Mem. at 8–11.)

The Court disagrees. Section 3.3 identifies the types of expenses that may qualify for reimbursement. It does not make every medical premium reimbursable regardless of how the premium was paid or whether reimbursement would be consistent with the Plan's tax-qualified structure. Section 2.1 states that "[t]he purpose of the Plan is to provide certain former Employees with an opportunity to receive reimbursement for eligible Health Care Expenses as provided in this Plan," that benefits payable under the Plan are intended to be excluded from participants' gross income under § 105(b) of the Internal Revenue Code ("IRC"), and that employer contributions to the Plan are intended to be excluded under § 106. (AR 62.) Article 48 of the Union Contract likewise limits reimbursement to premiums "allowed to be reimbursed under a VEBA." (AR 19.) The Plan does not authorize reimbursement merely because a premium relates to medical coverage; the premium must also qualify for reimbursement under the Plan's tax-qualified structure.

The administrative record shows that Plaintiff did not satisfy that requirement. BPAS specifically asked Plaintiff to provide documentation showing that the premiums from her spouse's employer were "not deducted from the spouse payroll check on a pre-tax basis," and advised that "[i]f deducted on a pre-tax basis, they are not eligible." (AR 2.) Plaintiff then submitted her husband's pay stub. The pay stub listed the medical premium under "Pre Tax Deductions." (AR 21.) BPAS denied the claim on that basis, explaining that "[i]nsurance premiums deducted from an employee payroll check on a pre-tax basis[] are not eligible" and that the item was "not eligible for reimbursement under this plan according to IRS guidelines." (AR 4.) On appeal, BPAS again stated that Plaintiff sought reimbursement for "pre-tax premiums" that were not reimbursable under IRS guidance. (AR 43.)

Plaintiff essentially argues that because the Plan does not expressly exclude pre-tax premiums, they must be reimbursable. But the Plan does not need to separately exclude every expense that already falls outside its reimbursement framework. Section 2.1 ties the Plan's benefits to IRC § 105(b). Article 48 ties reimbursement to amounts allowed under a VEBA. And Section 3.3 requires an "eligible" expense "incurred" by the participant, spouse, or dependent. Together, those provisions foreclose reimbursement where the claimed premium was paid through pre-tax salary reduction and already excluded from income through another employer-sponsored arrangement.

Plaintiff brings only one claim: an ERISA claim seeking benefits under the Plan. (*See generally* Compl.) The Union Contract does not create a separate basis for relief. And even if considered, the provision Plaintiff cites allows reimbursement only for premiums "allowed to be reimbursed under a VEBA." (AR 19.) That limiting language supports Defendants' position, not Plaintiff's.

Accordingly, Plaintiff has not demonstrated that the Plan required BPAS to reimburse premiums deducted on a pre-tax basis through her spouse's employer-sponsored plan, even under de novo review.

## II.    BPAS's Denial Was Reasonable and Supported by the Administrative Record

BPAS's substantive determination was supported by the administrative record. Before denying the claim, BPAS asked Plaintiff to confirm whether the premiums from her spouse's employer were deducted pre-tax. (AR 2.) Plaintiff then submitted her husband's pay stub, which listed the medical premium under "Pre Tax Deductions." (AR 21.) BPAS denied the claim on that basis. (AR 4.) On this record, BPAS reasonably concluded that the premiums were not reimbursable under the Plan. *Hobson*, 574 F.3d at 92; *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003). Where the plan grants discretionary authority, a court may not upset a reasonable interpretation by the administrator. *Jordan v. Ret. Comm. of Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1271 (2d Cir. 1995).

Revenue Ruling 2002-3 further supports BPAS's conclusion. There, the IRS addressed an arrangement in which health insurance premiums were paid through pre-tax salary reduction and the employer then sought to reimburse employees for those premiums. (Rev. Rul. 2002-3, ECF No. 26-1.) The IRS concluded that where the employer applies salary-reduction amounts to pay health insurance premiums, the premiums are treated as paid by the employer, not the employee, leaving no employee-paid premium to reimburse tax-free. *Id*. While revenue rulings are not binding on courts, they constitute "the official I.R.S. position on application of tax law to specific facts" and are persuasive authority on questions of IRC interpretation. *AmBase Corp. v. United States*, 731 F.3d 109, 121 n.12 (2d Cir. 2013).

Plaintiff seeks a tax-free reimbursement from the Marist Plan for premiums already paid through a pre-tax mechanism under her spouse's employer-sponsored plan. That would give Plaintiff the benefit of a second tax exclusion for the same premium expense, and paying out amounts that fail § 105(b) would jeopardize the Plan's tax-qualified status. BPAS reasonably concluded that the Plan did not permit that result.[1]

### III.    Plaintiff's Procedural Objections Do Not Require Judgment in Her Favor

Plaintiff raises two procedural objections: that BPAS did not timely decide her administrative appeal, and that the denial letters did not cite the specific Plan provisions and regulatory authority supporting the denial. (Pltf. Mem. at 5–8.) Both objections support de novo review, but neither establishes Plaintiff's entitlement to benefits.

ERISA requires a plan to provide a claimant with "a reasonable opportunity . . . for a full and fair review" of a denied claim. 29 U.S.C. § 1133(2). The governing regulations require a decision on appeal within sixty days for this type of claim. 29 C.F.R. § 2560.503-1(i)(1)(i). They also

---

[1] The Court does not rely on Chief Counsel Advice CCA201547006, which is not binding in any event but recognizes the same distinction that controls here: premiums paid on an after-tax basis may be reimbursable, while premiums paid through pre-tax salary reduction are not. See generally CCA201547006 at 6–7, ECF No. 26-2.

require denial notices to provide the specific reasons for the denial and refer to the plan provisions on which the denial is based. 29 C.F.R. § 2560.503-1(g). A plan's failure to strictly comply with the claims-procedure regulation generally results in de novo review. *Halo v. Yale Health Plan*, 819 F.3d 42, 56–58 (2d Cir. 2016).

On timeliness, BPAS missed the sixty-day deadline by more than three months. Plaintiff appealed on August 19, 2024, followed up on December 12, 2024, noting that "the 60-day requirement had passed and that a determination needed to be made within ten days," and received no decision until January 6, 2025. (Pltf. 56.1 ¶¶ 14, 16–17; AR 6, 23, 43.) That delay violated both the SPD's appeal deadline and 29 C.F.R. § 2560.503-1(i)(1)(i).

On specificity, the denial letters were thin. The initial denial said only that pre-tax premiums were "not eligible for reimbursement under this plan according to IRS guidelines." (AR 4.) The appeal denial added a citation to IRS Publication 502 and little else. (AR 43.) Neither letter identified the Plan provisions on which the denial rested or explained how the Plan's tax-qualified structure barred reimbursement. Plaintiff did not learn the precise legal basis for the denial until Defendants filed their summary judgment papers. That too supports de novo review. *Halo*, 819 F.3d at 56–57.

But those failures do not establish Plaintiff's entitlement to benefits. A procedural violation affects the standard of review; it does not create a right to benefits the plan does not provide and cannot compel the Administrator to make payments inconsistent with the Plan's terms and tax-qualified structure. *Halo*, 819 F.3d at 58. ERISA does not create any substantive entitlement to employer-provided health benefits; it regulates the terms on which such benefits, if provided, must be administered. *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 82 (2d Cir. 2001). The question remains whether Plaintiff has established a right to reimbursement under the Plan. She has not.

11

The record also shows that Plaintiff understood the basis for the denial. Before issuing the initial denial, BPAS told Plaintiff that premiums deducted on a pre-tax basis through her spouse's payroll would not be eligible and asked for documentation on that issue. (AR 2.) Plaintiff submitted the pay stub reflecting pre-tax deductions. (AR 21.) Her administrative appeal challenged the same pre-tax rationale. (AR 6–9.) And her briefing in this action squarely addresses whether pre-tax premiums may be reimbursed. Although BPAS's notices were imperfect, Plaintiff was not denied a meaningful opportunity to challenge the actual basis for the denial, and the procedural shortcomings do not require reversal where the underlying determination was supported by substantial evidence. *Hobson*, 574 F.3d at 92.

## IV.     Plaintiff's Employee-Contribution Argument Does Not Alter the Result

Plaintiff argues in reply that, even if the entire $5,000 claim is not reimbursable, Mr. Hamel personally paid an employee share of $356.24 per month, or $4,274.88 annually, and that this portion should be reimbursed. (Pltf. Reply at 1–2.) This argument does not defeat Defendants' motion.

Judicial review of an ERISA benefits determination is ordinarily limited to the administrative record. *Miller*, 72 F.3d at 1071. Extra-record evidence may be considered only upon a showing of good cause. *Krauss*, 517 F.3d at 631; *DeFelice v. Am. Int'l Life Assurance Co. of N.Y.*, 112 F.3d 61, 67 (2d Cir. 1997). Plaintiff's breakdown of the premium appears for the first time on reply, and Plaintiff has not shown good cause for failing to present it during the administrative process. *Id.*

Even if the Court considered the evidence, it does not answer the critical question. The fact that a portion of the premium may have been allocated to Mr. Hamel as an employee contribution does not establish that the contribution was paid after tax. The administrative record shows the opposite — the pay stub placed the medical deduction under "Pre Tax Deductions" without distinguishing employer and employee shares. (AR 21.) Plaintiff has identified no record evidence

showing that the $356.24 monthly employee share was paid with after-tax dollars rather than through a pre-tax salary-reduction arrangement. Plaintiff's reply evidence does not show that any portion of the premium was paid with after-tax dollars, which is the relevant inquiry under § 105(b).

Because the existing record points only to pre-tax deductions, remand would serve no purpose. Where the record would produce the same result on remand, sending the case back "would be a useless formality." *Miller*, 72 F.3d at 1071. Plaintiff's employee-contribution theory neither defeats Defendants' motion nor supports her own, and does not change the result.

### CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED, and Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 20 and 25 and enter judgment in favor of Defendants.

Dated: May 19, 2026
      White Plains, New York

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

13